UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **ABBIE GILLELAND,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**EXPRESS SCRIPTS, INC.,** a Delaware registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Abbie Gilleland ("Plaintiff Gilleland" or "Gilleland") brings this Class Action Complaint and Demand for Jury Trial against Defendant Express Scripts, Inc. ("Defendant" or "Express Scripts") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded and other telemarketing calls to consumers without consent, including those calls made after a consumer requests for the calls to stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Gilleland, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1. Plaintiff Gilleland is a resident of Springfield, Illinois.

2. Defendant Express Scripts is a Delaware registered corporation headquartered in St. Louis, Missouri. Defendant Express Scripts conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District and because the Defendant places calls into this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.8 billion robocalls were placed in December 2023 alone, at a rate of 121.6 million per day. www.robocallindex.com (last visited January 29, 2023).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Express Scripts is a for-profit prescription purchase and delivery business.

15. Defendant Express Scripts places pre-recorded solicitation calls to consumers to solicit its pharmacy services, as per Plaintiff's experience.

16. Defendant Express Scripts also systematically fails to remove consumer phone numbers from its dialing systems when consumers request that Defendant stop calling, as per Plaintiff's experience.

17. Current and former Express Scripts employees have admitted online that cold calling is part of their job, including:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4

> **Great if you don't have any kind of dreams.**
> Pharmacy Technician (Current Employee) - St. Louis, MO - February 24, 2022
>
> Working at Express Scripts in their call center is the perfect job for people who are wanting to get above average pay for a really average job. If you don't have any kind of big dreams outside of corporate life, than ES is the perfect place for you. But be warned, they won't tell you that the call center is more a sales center.
>
> ✓ **Pros**
> Good pay, good benefits.
>
> ✗ **Cons**
> *Cold call*ing people about their rx's sucks. [3]
>
> **Call Center Elementary**
> Call Center Representative (Former Employee) - Dublin, OH - March 16, 2021
>
> It's a great job if you enjoy being micromanaged in everything you do, including going to the restroom. Also, if you enjoy cold calling and annoying people first thing in the morning and when they are at work, being treated like dirt this is the place for you.
>
> Another added benefit is the extra attention of having someone listen to all of your calls, nitpicking everything you do.
>
> I could go on and on but I wouldn't want to spoil the unpleasant surprises in store for you!
>
> ✓ **Pros**
> Flexible scheduling
>
> ✗ **Cons**
> Excessive call audits, cold calling [4]

18.     Consumers have posted complaints about the unsolicited and pre-recorded calls they received from Express Scripts, including:

- "I am receiving numerous phone calls and emails from express scripts everyday. I am not interested in pursuing any business with EXPRESS SCRIPTS. It is abundantly clear this organization is calling

---

[3] https://www.indeed.com/cmp/Express-Scripts/reviews?fcountry=ALL&ftext=cold+call#
[4] https://www.indeed.com/cmp/Express-Scripts/reviews?fjobtitle=Call+Center+Representative

my home everyday with harassing phone calls. Please assist me in desistiing these daily phone calls Please and thank you."[5]

- "Robo call – there was no reason express scripts should call me – first piece of information robot asked for was persona, birthdate."[6]
- "Unsolicited call"[7]
- "do not call"[8]
- "Robo"[9]
- "spam about a request I didn't make"[10]
- "Express Scripts left a recording about a prescription being approved but it was a wrong number apparently since I am not an Express Scripts member."[11]
- "Express Scripts automated call."[12]

19. In response to these calls, Plaintiff Gilleland brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF GILLELAND'S ALLEGATIONS

20. Plaintiff Gilleland is the sole owner and user of her cell phone number ending in 4417.

---

[5] https://www.bbb.org/us/mo/saint-louis/profile/health/express-scripts-0734-110132662/complaints?page=1&type=sales
[6] https://www.shouldianswer.com/phone-number/8007532851
[7] Id.
[8] Id.
[9] https://www.shouldianswer.com/phone-number/8007532851/2
[10] Id.
[11] Id.
[12] https://us.shouldianswer.net/phone-number/8778600982

21. Plaintiff Gilleland has been the sole owner and user of her cell phone number for over 8 years.

22. Plaintiff Gilleland uses her cell phone number for personal use only. It is not associated with a business.

23. Plaintiff Gilleland has never used her cell phone number for business purposes and has not advertised this number online for any purposes.

24. Plaintiff Gilleland uses her cell phone number to communicate with family and friends, and for household purposes only.

25. In 2013, Plaintiff Gilleland registered herself and Warren Pass, her husband at the time, with an Express Scripts plan so Plaintiff and Pass could receive prescription medications through Express Scripts.

26. Plaintiff Gilleland had Tricare through the U.S. Navy – Active duty.

27. When Plaintiff registered Pass, she did so using her cell phone number.

28. In 2017, Plaintiff Gilleland and Pass were divorced.

29. Prior to the divorce, Pass did not receive any medications or anything from Express Scripts.

30. In 2017, Plaintiff Gilleland received calls from Express Scripts regarding potential orders for medications for Pass.

31. Plaintiff Gilleland told the callers that she is no longer affiliated with Pass, that they had been divorced, and that she was no longer in contact with Pass.

32. Plaintiff Gilleland specifically asked for her phone number to be removed from the Express Scripts calling system.

33. Express Scripts asked for her to provide the date of birth of Pass and his zip code to which the Plaintiff provided that info. Based on that, Express Scripts assured the Plaintiff that her phone number would be removed from the system and she would no longer receive any more calls.

34. Despite her stop requests, the calls continued.

35. Each year since 2017, Plaintiff Gilleland has received at least 2 unsolicited calls, most of which were from live callers who identified the company name Express Scripts and who were calling to solicit orders for medications and/or prescriptions from Pass.

36. Time and again, Plaintiff Gilleland told the callers that she is not in contact with Pass and Plaintiff would demand for Express Scripts to remove her phone number from their calling list and system.

37. Despite at least 7 years of stop requests, Plaintiff Gilleland received an unsolicited pre-recorded call from Express Scripts on January 4, 2024 at 6:28 PM to her cell phone number:



38. When Plaintiff answered this call, a prerecorded system stated that the call was from Express Scripts and that the call was intended for Warren Pass.

39. Plaintiff Gilleland accepted the call and was transferred to a live employee. When the live employee came on the line, Plaintiff Gilleland explained that she had been receiving unsolicited calls for over 7 years and had made multiple requests for her cell phone number to be removed.

40. The Express Scripts employee asked for the date of birth and zip code of Pass. Plaintiff explained that she did not know that information, explaining that she had not been in contact with Pass since 2017. Plaintiff then asked the employee to remove her phone number from the Express Scripts call system.

41. The employee put Plaintiff Gilleland on hold for a few minutes. When the employee returned to the line, she explained that Express Scripts could not remove Plaintiff's cell phone number from the system without approval from Pass and without Pass' contact information.

42. The employee told Plaintiff Gilleland that there was nothing she could do. Plaintiff asked if this meant that the calls would continue, and the employee stated that the calls would continue until Plaintiff could provide Pass' contact information and when Pass would remove Plaintiff's phone number himself.

43. Plaintiff was very disturbed by this response from the employee and asked for a supervisor.

44. After a few minutes, a supervisor named Nikki came on the line. Nikki explained that the calls would continue, as the employee had stated previously until Pass would remove Plaintiff's phone number.

45. Express Scripts provided no solution for the Plaintiff to stop the unwanted calls to her cell phone.

46. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Gilleland in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

47. Seeking redress for these injuries, Plaintiff Gilleland, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48. Plaintiff Gilleland brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Express Scripts called on their cellular telephone number (2) using an artificial or pre-recorded voice (3) without prior express consent.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their residential telephone line at least two times (2) including at least once after the consumer had communicated their wish to not receive any further communications from the Defendant (3) for substantially the same reason Defendant called Plaintiff.

49. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Gilleland anticipates the need to amend the Class definition following appropriate discovery.

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    whether Defendant Express Scripts or its agents placed pre-recorded voice message calls to Plaintiff Gilleland and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

    (b)    whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (c)    whether the calls messages constitute a violation of the TCPA;

    (d)    whether Class members are entitled to an injunction against Defendant preventing it from making unsolicited prerecorded calls; and

    (e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Gilleland will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Gilleland has no interests

antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Gilleland and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Gilleland nor her counsel have any interest adverse to the Classes.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Gilleland. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gilleland and the Pre-recorded No Consent Class)**

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. Defendant Express Scripts and/or its agents transmitted unwanted telephone calls to Plaintiff Gilleland and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

56. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Gilleland and the other members of the Pre-recorded No Consent Class.

57. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Gilleland and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

# SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gilleland and the Internal Do Not Call Class)**

58. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

59. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any

call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

    (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

    (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

    (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

    (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60. Defendant placed calls to Plaintiff and members of the Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

61. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Gilleland requests a jury trial.

          **ABBIE GILLELAND**, individually and on behalf of all others similarly situated,

DATED this 5th day of February, 2024.

By: /s/ *Stefan Coleman*

Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
66 West Flagler Street, Unit 900
Miami, FL 33130
(877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*