IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

ABBIE GILLELAND,  )
    Plaintiff,  )
  )
v.  )    Case No. 24-cv-3019
  )
EXPRESS SCRIPTS, INC.,  )
    Defendant.  )

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Motion for Summary Judgment by Defendant Express Scripts, Inc. (Doc. 23).

### I. PROCEDURAL BACKGROUND

On February 5, 2024, Plaintiff Abbie Gilleland filed a class action complaint against Express Scripts, Inc. alleging violations of the Telephone Consumer Protection Act ("TCPA"). (Doc. 1). Plaintiff argues Defendant made unwanted telephones calls *en masse* to herself and others similarly situated using pre-recorded messages without express prior written consent in violation of 47 U.S.C. § 227(b)(1)(A)(iii) ("Count I"). Plaintiff originally argued Defendant made prohibited telemarketing calls ("Count II") but now concedes the calls do not constitute telemarketing. (Doc. 28 at 19). Therefore, judgment is hereby entered against her on Count II.

## II. FACTUAL BACKGROUND[1]

In 2013, Plaintiff and her then-husband, a former Navy servicemember, registered for health insurance through TRICARE using Plaintiff's phone number. (Doc. 23 at ¶¶ 28–29). TRICARE is a healthcare program run by the Department of Defense ("DoD") for uniformed service members, retirees, and their families. (*Id.* at ¶ 2). The DoD contracts with Defendant to provide pharmacy benefit management services to TRICARE members. (*Id.* at ¶ 3). Under its contract, Defendant must "investigate" whether TRICARE members have other health insurance that covers their prescription claims and must "implement processes to maximize the identification of [other health insurance], including but not limited to utilizing commercial services or data sources." (*Id.* at ¶¶ 13–14). This requirement helps ensure claims are processed through other health insurance before TRICARE covers them—TRICARE is a "secondary payer" that only pays after other health insurance processes a claim. 32 C.F.R. § 199.8(a)(1); (Doc. 23 at 12). Defendant also calls TRICARE members to educate them about their prescription drug benefits. (*Id.* at ¶ 21). TRICARE members can opt out of "patient communications" but continue to receive "mandatory" communications related to their "order, payments, treatment, health and safety, and other similar communications." (*Id.* at ¶¶ 37–38). Under Defendant's Standard Operating Procedures, when a representative calls a non-

---

[1] Unless otherwise noted, the factual background of this case is drawn from the undisputed facts as conceded to in Defendant's statement of undisputed material facts; Plaintiff's response to Defendant's statement of undisputed material facts and counterstatement of material facts; Defendant's reply to Plaintiff's additional material facts; and exhibits to the filings. Exhibit citations are used for facts the Court finds are undisputed from the summary judgment record.

TRICARE-member, the representative must effectively remove the number from the associated account and document such action in a communications log called the Customer Contact Detail ("CCD"). (*Id.* at ¶ 26). Defendant maintains a CCD for each TRICARE member that tracks and records communications between members and Defendant, including emails, text messages, and phone calls. (*Id.* at ¶ 22).

During her marriage, Plaintiff received phone calls from Defendant about "medical issues" and "medications." (*Id.* at ¶ 30). Upon her divorce in 2017, Plaintiff was no longer a TRICARE beneficiary but continued to receive calls from TRICARE. (Doc. 28 at ¶¶ iii–iv). The parties dispute how many calls Defendant made to Plaintiff, but CCD logs and Plaintiff's own phone records show Defendant made several calls to Plaintiff between 2022 and 2024. (Doc. 23-1, Exs. 4, 6, 8; Doc. 23-3, Exs. 4–8).[2] Plaintiff maintains she received approximately two to four calls a year from Defendant between 2018 and 2024 but does not identify them all in her AT&T phone records or the CCD logs. (Doc. 28 at ¶ v).

The parties also disagree over how many times Plaintiff requested the calls to stop. Plaintiff alleges she repeatedly told Defendant to stop calling her and recalls giving a representative her ex-husband's correct number during one of the calls. (*Id.* at ¶¶ vi–vii). Defendant asserts Plaintiff only tried to stop the calls once on January 4, 2024. (Doc. 23 at ¶¶ 42–44). During that call, Plaintiff told the representative her name and that the

---

[2] Defendant says it called Plaintiff's phone number nine times after the divorce: on July 29, 2021; September 8, 2021; October 20, 2021; January 20, 2022; March 1, 2022; May 5, 2022; February 3, 2023; March 11, 2023; and January 4, 2024. (Doc. 32 at 2). However, Defendant's earlier filing contradicts this claim. *See, e.g.*, Doc. 23 at ¶ 35 (noting a phone call was made to Plaintiff's number on May 9, 2022).

representative had the wrong number and was trying to reach her ex-husband. (*Id.* at ¶ 42). The representative and a supervisor attempted to have Plaintiff authenticate her ex-husband's account but eventually told her she couldn't make account changes without her ex-husband's permission. (*Id.* at ¶¶ 43–44). This behavior was inconsistent with Defendant's Standard Operating Procedures, which instruct representatives to remove phone numbers from accounts when they reach non-members. (*Id.* at ¶ 46). However, even though the representative and supervisor did not follow protocol, Defendant did not call Plaintiff after the January 4, 2024 call. (*Id.* at ¶ 47).

Two other calls in the CCD logs are of note. The logs indicate a call was made on March 7, 2022 that "reached a phone number that does not belong to the patient we are trying to contact." (*Id.* at ¶ 34). The logs also show a May 9, 2022 call to Plaintiff's number with comments indicating a representative spoke with Plaintiff's ex-husband who requested to not be contacted. (*Id.* at ¶ 35). The logs record updating Plaintiff's ex-husband's contact preferences to not receive non-mandatory calls. (*Id.* at ¶¶ 35–36).

## III. DISCUSSION

### A. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. *Carroll v. Lynch,* 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is only material if its resolution might change the suit's outcome under

the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Summary judgment is not appropriate if a reasonable jury could just as easily return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (internal quotations omitted).

### B. Analysis

#### (1) Initial Consent

Plaintiff provided consent to receive calls from Defendant when she and her ex-husband signed up for TRICARE using Plaintiff's phone number. The TCPA prohibits making "any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communications Commission ("FCC") has explained that "prior express consent" can be satisfied when people knowingly release their phone numbers. *See* 47 C.F.R. § 64.1200(a)(1); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 (1992). Under this standard, Plaintiff

consented to receive calls from Defendant when she and her then-husband used her number to sign up for TRICARE.

Plaintiff argues that even if she did provide consent to receive calls, Defendant exceeded the scope of the consent. The Seventh Circuit has held that "an effective consent is one that relates to the same subject matter as is covered by the challenged calls." *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (citation omitted). Plaintiff testified that Defendant's calls were about "medical issues" and "medications," which certainly fall within the ambit of Plaintiff's given consent. Therefore, Plaintiff has not demonstrated Defendant stretched Plaintiff's initial consent beyond its scope.

### (2) Revocation of Consent

The Court now turns to whether and when Plaintiff revoked her initial consent to receive calls. Consent to receive calls can be revoked "at any time and through any reasonable means." *Id.* at 803 (quotations omitted). Defendant argues Plaintiff kept receiving calls after her divorce because she didn't revoke consent. However, Plaintiff contends she repeatedly revoked consent. The parties also dispute the number of calls Plaintiff received but this disagreement is subordinate to the revocation inquiry—if Plaintiff never revoked consent to receive calls, the number of calls she allegedly received is irrelevant.[3]

---

[3] Plaintiff unilaterally redacted information in her phone records about "personal" calls not "at issue in this case." (Doc. 23 at ¶ 50). The redacted records only show three calls from Defendant. Defendant argues Plaintiff can only raise issue with these three unredacted calls. However, Defendant's own records show additional calls made to Plaintiff. In ruling on a motion for summary judgment, the court looks at the "record as a whole" and will not limit its consideration to the three unredacted calls. *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989).

Plaintiff never reached out to Defendant or TRICARE to remove her information from her ex-husband's account. (Doc. 23 at ¶ 31). Furthermore, the CCD logs expressly acknowledge speaking to Plaintiff only once after the divorce, on January 4, 2024, after which no further calls were made. (*Id.* at ¶¶ 42, 47). In response, Plaintiff says she asked Defendant to stop calling her every time she answered an unwanted call. (Doc. 28 at ¶ vi). Plaintiff also questions the accuracy of the CCD logs and Defendant's interpretation of the often sparse and abbreviated comments accompanying entries. When disputing the accuracy of record evidence, "mere assertions are insufficient to create a jury issue." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010). Plaintiff raises several legitimate issues that go beyond mere assertions of inaccuracy with regards to the CCD logs and protocol variances.

The CCD logs record a call made May 9, 2022 to Plaintiff's number. The entry's comments say a representative spoke to Plaintiff's ex-husband who requested to be placed on the Do Not Contact list. (Doc. 23 at ¶ 35). Plaintiff questions the accuracy of this entry, asserting the representative actually spoke to Plaintiff and misattributed Plaintiff's do-not-call request to her ex-husband. (Doc. 28 at 22). If Plaintiff answered the phone and communicated she was not a TRICARE member, her number should have been effectively removed from the TRICARE account, consistent with Defendant's Standard Operating Procedures. (Doc. 23 at ¶ 26). Plaintiff also points to the behavior of the representative and supervisor during the January 4, 2024 call with Plaintiff. Defendant concedes the representative and supervisor did not follow protocol during the

call and should have removed Plaintiff's number from the account rather than asking Plaintiff to authorize the account. (*Id.* at ¶ 45). These examples show the CCD logs may be unreliable or ambiguous and representatives making calls cannot be assumed to always follow protocol. The May 9, 2022 call could also be interpreted by a jury to have been a revocation of consent by Plaintiff. On summary judgment, a court must "constr[ue] the record in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Construing the record in the light most favorable to Plaintiff, the Court finds there is a material factual dispute as to whether Plaintiff revoked consent to receive calls from Defendant.

### (3) Derivative Sovereign Immunity

Defendant argues that even if it placed calls investigating other health insurance to Plaintiff without consent, Defendant is entitled to derivative sovereign immunity stemming from *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940). If derivative sovereign immunity applies, Defendant would be immune from Plaintiff's claims because the DoD is not subject to the TCPA's prohibitions. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016). Under *Yearsley*, "[a] federal contractor who simply performs as directed by the Government may be shielded from liability for injuries caused by its conduct." However, "no 'derivative immunity' exists when the contractor has 'exceeded [its] authority' or its authority 'was not validly conferred.'" *Id.* at 154 (quoting *Yearsley*, 309 U.S. at 20–21). In *Campbell-Edwald,* the Supreme Court found no derivative sovereign

immunity from a TCPA claim for a government contractor the Navy authorized to send recruiting text messages to individuals who had "opted in" to receive solicitations. *Id.* at 153-154. The Court denied immunity when record evidence indicated the government contractor had violated both the TCPA and the Navy's instructions by sending text messages to individuals who had not "opted in" to receive them. *Id.*

Defendant argues the calls made to Plaintiff were pursuant to its contract with the DoD and related regulations. (Doc. 23 at 22-23). Under the DoD contract, Defendant is required to "investigate" whether TRICARE members have other health insurance that covers their prescription claims and must "implement processes to maximize the identification of [other health insurance], including but not limited to utilizing commercial services or data sources." (*Id.* at ¶ 13-14). Even if a TRICARE member opts out of receiving patient communications, Defendant still makes these calls as they are "mandatory" under its Standard Operating Procedures. (*Id.* at ¶ 37-39). However, as discussed above, Plaintiff asserts Defendant continued to call her *after* it was evident her number did not belong to a TRICARE member. Defendant has not shown its contract with the DoD requires it to call non-TRICARE-members and therefore cannot argue making such calls would be "simply perform[ing] as directed by the Government." *Campbell-Ewald Co.*, 577 U.S. at 167. Therefore, the Court denies Defendant's request for sovereign immunity.

## IV.  CONCLUSION

Based on the foregoing, Express Script's Motion for Summary Judgment, (Doc. 23), is DENIED with respect to Count I and GRANTED with respect to Count II.

ENTER: 9/30/2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE